UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
A.D.E. Systems, Inc.,

                         **VERIFIED COMPLAINT**

             Plaintiff,             Case No.: 17 cv 3822

    - against –                **Jury Trial Demanded**

Quietside Corporation, Quietside, LLC, and
Samsung HVAC, LLC,

             Defendants.
---------------------------------------------------------------X

      Plaintiff A.D.E. Systems, Inc., by and through its attorneys, LEVITT LLP, as and for its Verified Complaint against Defendant Quietside Corporation, Quietside, LLC and Defendant Samsung HVAC LLC, respectfully alleges as follows:

### PARTIES

      1.    At all times hereinafter mentioned, Plaintiff A.D.E. Systems, Inc. ("ADE" or "Plaintiff") was, and still is, a domestic business corporation, organized and existing under and by virtue of the laws of the State of New York, conducting business in New York, with its principal place of business located at 19 Wilbur Street, Lynbrook, New York 11563, in the County of Nassau, State of New York.

      2.    Upon information and belief, at all times hereinafter mentioned, Defendant Quietside Corporation ("Quietside Corp.") was a foreign corporation, organized and existing under and by virtue of the laws of the State of California, conducting business in New York, with its principal place of business located at 411 Hackensack, Hackensack, New Jersey 07601, in the County of Bergen, State of New Jersey.

1

3. Upon information and belief, at all times hereinafter mentioned, Defendant Quietside, LLC ("Quietside LLC") was, and still is a foreign limited liability company, organized and existing under and by virtue of the laws of the State of California, conducting business in New York, with its principal place of business located at 3550 Wilshire Boulevard, Suite 738, Los Angeles, California 90010, in the County of Los Angeles, State of California.

4. Upon information and belief, on or about July 15, 2014, Quietside Corp. converted its form of business entity from a corporation to a limited liability company, *to wit,* Quietside, LLC. (Quietside Corp. and Quietside LLC are sometimes hereinafter collectively referred to as "Quietside").

5. Upon information and belief, and at all times hereinafter mentioned, Defendant Samsung HVAC, LLC ("Samsung HVAC") was, and still is a foreign limited liability company, organized and existing under and by virtue of the laws of the State of California, conducting business in New York, with its principal place of business located at 776 Henrietta Creek Road, Suite 100, Roanoke, Texas 76262, in the County of Denton, State of Texas.

6. Upon information and belief, Samsung HVAC is a subsidiary of Samsung Electronics America, Inc. ("Samsung Electronics").

7. At some point in time, Samsung Electronics purchased Quietside.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity of citizenship between Plaintiff and Defendants and because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. 302(a) because Defendants transacted business within the State of New York or contracted business anywhere to supply goods or services within the State of New York.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

### ADE's Relationship with Quietside

11. Upon information and belief, Quietside engages in the import, sale, marketing, and distribution of heating, air conditioning, and refrigeration equipment used in homes and businesses to wholesale distributors in the United States and Canada.

12. Upon information and belief, since 1997, Quietside Corp. was the master distributor for Samsung heating, ventilation and air-conditioning ("HVAC") products in the US and Canada.

13. Upon information and belief, Quietside Corp. utilized "spec-in sales representatives" to, *inter alia*, distribute HVAC products.

14. ADE has been involved in the design of HVAC systems and the distribution of HVAC equipment as a manufacturers' representative since 1973.

15. In the early part of 2013, as a premier manufacturers' representative of HVAC products, ADE was approached by Quietside Corp. to become a "spec-in sales representative."

16. As a spec-in sales representative, ADE would be required to solicit orders for the DVM PLUS II, III & DVMS range of goods and services (the "Products") exclusively for a defined area ("Spec Rep").

17. Prior to ADE entering into an agreement to become a Spec Rep for Quietside Corp., Quietside Corp. represented to ADE that the total market potential for the Products was easily in the range of tens of millions of dollars annually.

18. As a result, ADE made the decision to enter into an agreement with Quietside Corp.

19. On or about May 17, 2013, ADE and Quietside Corp. entered into an agreement entitled "Quietside Corporation DVM Products Sales Representative Agreement" (the "Agreement").

20. The Agreement states, in pertinent part, that Quietside Corp. grants to ADE as a Spec Rep:

> the exclusive right . . . to act as [Quietside Corp.'s] SPEC REP, to solicit orders for [Quietside Corp.'s] DVM PLUS II, III & DVMS range of goods and services ("Product") within the following area:[1]
>
> **Southern NY** (Orange, Putnam, Westchester, Rockland, Bronx, Manhattan, Queens, Brooklyn, Staten Island, Nassau and Suffolk county) and **Northern NJ** (Sussex, Passaic, Bergen, Essex, Union, Morris, Warren, Hudson, Hunterdon, Somerset, Middlesex, Mercer and Monmouth county) **Florida** – Tampa & Orlando

Agreement ¶ 1.

21. ADE performed as required under the terms of the Agreement, and complied with the Agreement in all other respects.

22. ADE made a significant investment of time, money and resources, to represent Quietside Corp. and to warehouse the Products.

23. ADE publicly identified itself as a "spec-in sales representative" of the line of Products covered by the Agreement.

24. ADE actively marketed and promoted the line of Products covered by the Agreement, and included this line of Products in ADE's quotes and design specifications.

---

[1] The Products covered by the Agreement include Samsung products.

25. In addition, ADE went above and beyond the requirements of the Agreement on multiple occasions.

26. ADE expanded its employee base to service Defendants' needs that arose in connection with the Agreement and the line of Products and to ensure the success of this Agreement, by among other things:

   a. Employing five (5) Variable Refrigerant Flow "VRF" specialists even though one was required under the Agreement, and

   b. Employing two (2) field technicians even though one (1) was required under the Agreement.

27. ADE held five (5) in house seminars even though only one (1) seminar was required under the Agreement.

28. ADE sent multiple employees to out of state trips to develop an expertise in the line of Products covered by the Agreement.

29. ADE ensured all its VRF Specialists attended each and every training class offered to develop an expertise in the line of Products covered by the Agreement.

30. ADE built training and demo rooms and installed Samsung equipment in such rooms.

31. To introduce Defendants into the New York City area, since Defendants had no presence in that area, ADE hosted a trailer in New York City where over one-hundred (100) NYC engineers and mechanical contractors attended to inquire and/or view the Products.

32. ADE spent over three (3) years pioneering the line of Products into the territories covered by the Agreement, at great expense to ADE.

33. In fact, ADE's efforts were so effective that in 2015 ADE was presented with an award by Defendants for being the Number One Sales Office in the country for the line of Products.

**Samsung Electronics' Acquisition of Quietside
and Samsung HVAC's purported termination of the Agreement**

34. Pursuant to the Agreement, ADE was provided with an annual action plan and annual sales target that it was required to meet.

35. Pursuant to the Agreement, Quietside Corp.'s "authority to terminate the Agreement with ADE was <u>limited</u> to a time when, *inter alia*, "Spec Rep fails to accomplish[ sic ] agreed <u>annual</u> sales target." *Id.* ¶ 4 (emphasis added).

36. Moreover, the Agreement provides that any termination notice shall be "given by <u>one party to the other</u> indicating such party's election to terminate the Agreement . . . " *Id.* ¶ 5 (emphasis added).

37. In 2016, ADE surpassed its annual sales target for the 2016 calendar year.

38. On January 31, 2017, a month into the 2017 calendar year, ADE was provided with a new action plan and sales target for the 2017 calendar year ("2017 Plan and Sales Target").

39. Just six weeks after receiving the 2017 Plan and Sales Target, on or about March 11, 2017, Samsung HVAC sent a letter to ADE attempting to terminate the Agreement ("Termination Notice"), such termination effective May 10, 2017.

40. However, as set forth above, ADE and Quietside are the parties to the Agreement.

41. As such, Samsung HVAC had no authority whatsoever to even attempt to terminate the Agreement, as Samsung HVAC is not a "party" to the Agreement.

42. Even assuming, *arguendo*, that Samsung HVAC had authority to attempt to terminate, or to terminate, the Agreement, there would still exist no basis upon which to terminate the Agreement.

43. As set forth above, pursuant to the Agreement, Quietside Corp.'s "authority to terminate the Spec Rep relationship," is limited to a time when, *inter alia*, "Spec Rep fails to accomplish[ sic ] agreed annual sales target." *Id.* ¶ 4 (emphasis added).

44. Consistent with the foregoing, Section 4.4 of the Agreement, entitled "Minimum Business Requirements" illustrates that the ADE's requirements to maintain the Spec Rep relationship, were based upon a calendar year. *See Id.* For example, the Agreement states, in pertinent part:

   a. "the Spec Rep shall meet [following] business conditions (for 2013 calendar year)."

   b. "Spec Rep shall endeavor to provide an annual minimum sales total target."

   c. "Principal reserves the right to amend the sales target annually."

45. Therefore, whether or not ADE "accomplish[ed] agreed [sic] annual sales target" can only be determined *after* the 2017 calendar year has ended, *not before*. *See generally Id.* ¶ 4 (emphasis added).

46. As a result, the purported termination of the Agreement before 2017's year end and before any determination was made that ADE failed to meet its sales target for the 2017 calendar year was in breach of the Agreement.

47. Not only did Defendants breach the Agreement by purporting to terminate the Agreement in direct contravention of the terms of the Agreement, but Defendants breached the Agreement by failing to provide ADE with a corrective action plan or recovery plan under the Agreement.

48. The 2017 Plan and Sales Target provides that in the event ADE does not meet any quarterly target, the parties are to meet and agree upon a mutually determined corrective action plan as well as a mutually agreed upon recovery plan. The 2017 Plan and Sales Target specifically states, in pertinent part:

   a. "Monthly review of progress, challenges, pipeline with corrective action plan (if necessary) to be mutually determined"; and the parties are required to

   b. "Establish a recovery plan if the target was not achieved for the quarter."

49. Defendants did not ask for, not conduct, any sort of meeting to discuss a mutually determined corrective action plan or a recovery plan.

50. By terminating the Agreement in March 2017 based upon ADE's performance in the 2017 calendar year for a period of less than six (6) weeks, and neither providing a mutually determined corrective action plan nor a recovery plan, Defendants breached the Agreement.

51. In its March 15, 2017 response to the Termination Notice,. ADE stated:

> You developed a 2017 action plan and sent it on 1/31/17. Giving us only a month and a half to address it, and we did. We meet every one of you required items at great cost to ADE. It is obvious that the change in action plan sales goals was an attempt to make ADE look bad in order to justify termination. Nowhere in our contract does it talk about quarterly goals only yearly. As you can see by the attached list of basis of design projects that by year's end given the proper support from Samsung we would have far surpassed our goal. You are well aware that ADE does not determine the construction cycle, it is not an exact science, and shipping material is up [to] the contractors that buy them. We did everything you asked and more. You used ADE to get into a market where you had NO plan and spec presence. We have put you on the map with the Engineering and Contracting community in NYC. Now that we have forged our way past all the difficulties and are really beginning to perform, you want to give the line to our competitor.

52. Defendants did not deny any of ADE's allegations.

53. In fact, ADE received no response to its March 15, 2017 letter.

54. On or about May 10, 2017, counsel for ADE sent a letter to Samsung rejecting the Termination Notice in its entirety.

55. Again, ADE received no response to its counsel's letter dated May 10, 2017.

56. In addition, pursuant to the terms of the Agreement, "[i]f the Agreement shall terminate …, Principal agrees to ship all orders currently in house or furnished during the notice period. *See* Agreement ¶ 5.

57. In ADE's March 15, 2017 response to the Termination Notice, ADE demanded that Defendants (a) take back unsold inventory valued at more than One-Hundred Fifty Thousand Dollars ($150,000.00); (b) reimburse ADE for training rooms and electric upgrades built to showcase Defendants' equipment, costing approximately Ninety-Three Thousand Dollars ($93,000.00); and (c) pay current contract or back charges at Brookline (a customer of ADE) of approximately Thirty-Five Thousand Dollars ($35,000.00).

58. Moreover, ADE demanded that Defendants honor all of the current jobs for which ADE had purchase orders, as well as ADE's specified Basis of Design projects, past the sixty (60) days listed in the Termination Notice ("Open Orders").

59. By letter dated May 15, 2017, Russell Tavolacci, Senior Vice President of Samsung HVAC ("Tavolacci") assured ADE that Defendants would honor all the Open Orders.

60. Vic Perez, National Sales Director of Samsung HVAC ("Perez") made similar assurances that Defendants would honor all the Open Orders

61. However, despite such assurances by Tavolacci and Perez, Defendants have failed to fulfill their commitment to ADE to honor all the Open Orders.

62. Defendants have also (a) refused to take back unsold inventory valued at more than One-Hundred Fifty Thousand Dollars ($150,000.00); (b) refused to reimburse ADE for training

rooms and electric upgrades built to showcase Defendants' equipment, costing approximately Ninety-Three Thousand Dollars ($93,000.00); and (c) refused to pay current contract or back charges at Brookline (a customer of ADE) of approximately Thirty-Five Thousand Dollars ($35,000.00).

63. Moreover, ADE has no way of checking on any of the Open Orders whatsoever, as Defendants have cut off ADE's access to Defendants' computer system.

64. By virtue of the foregoing acts, as well as other acts to be discovered, ADE has been, and continues to be, damaged.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### Breach of Contract (The Agreement)

65. ADE repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "64" above, as if same were more fully set forth at length herein.

66. The parties were and continue to bound by the Agreement.

67. As set forth above, ADE has performed and fully complied with all of its obligations under the Agreement.

68. That despite the foregoing, Defendants purported to terminate the Agreement.

69. The aforementioned acts of Defendants, as well as other acts to be discovered, constitute a breach of contract.

70. As a result of the foregoing, ADE has been damaged, continues to be damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### Anticipatory Breach of Contract (The Agreement)

71. ADE repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "70" above, as if same were more fully set forth at length herein.

72. The parties were and continue to bound by the Agreement.

73. As set forth above, ADE has performed and fully complied with all of its obligations under the Agreement.

74. Defendants wrongfully repudiated the Agreement which had the effect of preventing ADE from receiving the benefits to which it is entitled under the Agreement, including, but not limited to, monthly review of progress with corrective action plan (if necessary) to be mutually determined; the establishment of a recovery plan if a quarterly target were not met; and the opportunity to accomplish its annual sales target.

75. Defendants wrongfully repudiated the Agreement prior to the time designated in the Agreement.

76. The aforementioned acts of Defendants, as well as other acts to be discovered, constitute an anticipatory breach of the Agreement.

77. As a result of the foregoing, ADE has been damaged, continues to be damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

78. ADE repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "77" above, as if same were more fully set forth at length herein.

79. As set forth above, ADE and Quietside Corp. are parties to the Agreement.

80. As a party to the Agreement, Quietside Corp. has the obligation to avoid any deliberate conduct which would deprive, and/or withhold benefits, from ADE, and/or prevent ADE from performing under the Agreement.

81. Quietside has interfered with and failed to cooperate in ADE's performance under the terms of the Agreement.

82. Quietside has exhibited a lack of diligence and slacking off of its obligations under the terms of the Agreement.

83. The aforementioned conduct of Defendants deprived ADE of its benefits due under the terms of the Agreement.

84. By virtue of the aforementioned conduct of Defendants, the benefits of the Agreement have been withheld from ADE.

85. The aforementioned conduct of Defendants has prevented performance of the Agreement.

86. The conduct of Defendants has been deliberate.

87. The aforementioned acts by Defendants, as well as other acts to be discovered, constitute a breach of the implied covenant of good faith and fair dealing in connection with the Agreement.

88. As a result of the foregoing, ADE has been damaged, continues to be damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
### (Unjust Enrichment)

89. ADE repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "88" above, as if same were more fully set forth at length herein.

90. Pursuant to the terms of the Agreement and over the course of three years, ADE expended substantial time, effort and money to build and promote a market for the Products in the designated area.

91. The aforementioned market for the Products was, in fact, established through and because of ADE's efforts.

92. As a result of ADE's efforts, Defendants were placed in a position to exploit a market that has been created for the Products through the efforts of ADE and to realize substantial profits, assets and/or benefits from the sales of such Products in the designated area.

93. That as a result of the foregoing, Defendants received the profits, assets and/or benefits of ADE and have not compensated ADE for same.

94. That as a result of the foregoing, as well as other acts yet to be uncovered by ADE, it is against equity and good conscience to permit Defendants to exploit and retain these profits, assets and/or benefits because the Defendants have been unjustly enriched.

95. As a result of the foregoing, ADE has been damaged, continues to be damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANTS
### (Accounting)

96. ADE repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "95" above, as if same were more fully set forth at length herein.

97. As set forth above, Defendants had a confidential and/or fiduciary relationship with ADE.

98. Defendants are in complete control of the financial records relating to the Open Orders which would establish the extent to which Defendants have received monies by the aforementioned acts.

99. That as a result of the foregoing, Defendants have a duty to account for monies wrongfully received in connection with such Open Orders.

100. That ADE may have no adequate remedy at law.

101. That as a result of the foregoing, ADE has been damaged, continues to be damaged, and demands of Defendants a full and formal accounting to determine the amount of monies owed to ADE in connection with the Open Orders.

**WHEREFORE**, ADE demands judgment against Defendants as follows:

**As and for the First Cause of Action**, ADE has been damaged, continues to be damaged and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

**As and for the Second Cause of Action**, ADE has been damaged, continues to be damaged and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

**As and for the Third Cause of Action**, ADE has been damaged, continues to be damaged and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

**As and for the Fourth Cause of Action**, ADE has been damaged, continues to be damaged and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed to be in excess of Four-Million Dollars ($4,000,000.00).

**As and for the Fifth Cause of Action**, ADE has been damaged, continues to be damaged and demands a full and formal accounting to determine the amount of monies owed to ADE in connection with the Open Orders.

Together with interest, attorney's fees, and the costs and disbursements of this action, and such other further or different relief to Plaintiff as this Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff requests a jury trial of all issues so triable.

Dated: Mineola, New York
June 23, 2017

                            LEVITT LLP

By: _____
Steven L. Levitt, Esq.
Susan J. Deith, Esq.
*Attorneys for Plaintiff*
129 Front Street
Mineola, New York 11501
(516) 248-9700 Phone
(516) 741-9224 Fax
slevitt@levittlawllp.com
sdeith@levittlawllp.com

To:    Quietside Corp
        411 Hackensack,
        Hackensack, New Jersey 07601

## CORPORATE VERIFICATION

STATE OF NEW YORK )
                  ) SS.
COUNTY OF NASSAU  )

**RICHARD AROTE, JR.**, being duly sworn, deposes and says:

I am the President of A.D.E. Systems Inc., the Plaintiff Corporation named in the within entitled action; I have read the annexed Verified Complaint and know the contents thereof, and upon information and belief, the same are true.

Deponent further states that the reason this verification is made by deponent and not by the Plaintiff is because the said Plaintiff is a domestic corporation and deponent is an officer thereof, to wit: President.

_____
**RICHARD AROTE, JR.**

Sworn to before me this
26th day of June, 2017.

_____
NOTARY PUBLIC

VALORIE E MANCUSO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MA5082168
Qualified in Queens County
My Commission Expires July 21, 2021